Richard HAMILL, Appellant,

v.

Julie Ann LEVEL, Appellee.

No. 2–94–193–CV.

Court of Appeals of Texas,
Fort Worth.

June 1, 1995.

Rehearing Overruled July 6, 1995.

Timothy E. Malone, Fort Worth, for appellant.

Vince Cruz, Jr. & Associates, and Vince Cruz, Jr., Fort Worth, for appellee.

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

RICHARDS, Justice.

Richard Hamill (Hamill) appeals from the trial court's order granting Julie Ann Level's (Level) motion to dismiss with prejudice. Following the guidelines for appellate review of "death penalty" discovery sanctions, we hold the trial court's imposition of the ultimate sanction under these circumstances was not an abuse of discretion. We affirm the ruling of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves a negligence suit for damages arising out of an automobile accident between Hamill and Level on May 14, 1991. On November 24, 1992, Hamill filed suit against Level claiming she was negligent in her operation of her vehicle.

After a delayed service of process, Level filed an answer in early August 1993, along with a set of interrogatories and requests for production to Hamill. By early September, Hamill had neither answered nor objected to the discovery. On October 19, 1993, Level's attorney notified Hamill by mail that he had not received any response to the discovery requests.

Level filed a motion to compel on November 8, 1993. The court set the hearing date for the motion on December 13, 1993 at 1:30 p.m. Hamill's lawyer was notified of this

hearing date. On the day of the hearing, Level's attorney received a hand-delivered letter from Hamill's lawyer proposing to answer Level's discovery on or before January 14, 1994 and to pay the sum of $200 to Level for the necessity of filing the motion. Level's attorney accepted the terms of the letter. The hearing to be held later that day was canceled.

On December 21, 1993, counsel for both parties attended a hearing on the court's Notice of Intent to Dismiss the case. Counsel for Hamill noted the parties' agreement to a January 14th extension to file discovery and the court removed the case from the dismissal docket.

After the January 14th deadline passed without any discovery responses by Hamill, Level filed a Motion to Dismiss on April 4th. The hearing on this motion was scheduled for May 2, 1994 at 2:00 p.m. Just before the hearing, Hamill filed his responses to Level's discovery requests. The May 2nd hearing proceeded with both parties present, and the court orally granted the motion to dismiss. The court entered an order dismissing Hamill's claims with prejudice on May 9, 1994.

Hamill filed a Motion to Reinstate or alternatively a Motion for New Trial on June 7, 1994. The hearing on the motion was set for July 13, 1994. After the hearing, the court denied the motion.

In a single point of error on appeal, Hamill argues the trial court erred in dismissing his claims with prejudice as a sanction for violation of the discovery rules. Hamill contends this sanction, commonly referred to as a "death penalty" sanction, is inappropriate because the court at no time entered an order to force him to comply with the discovery requests. Hamill also complains about the death penalty sanction because it was imposed by the court in spite of his eventual compliance with Level's discovery requests.

In addition to the issue of whether the death penalty sanction was appropriate in this case, the unique issue on appeal is whether a discovery agreement by the parties to enforce both a discovery deadline and payment of inconvenience money may serve as a "lesser sanction" as it relates to the court's subsequent consideration of the death penalty sanction after the recalcitrant party failed to fully comply with the agreement, even though no formal court order of lesser sanctions was violated.

## STANDARD OF REVIEW FOR DISCOVERY SANCTIONS

The standard of review of a trial court's discovery sanctions is whether the court abused its discretion. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex. 1986). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In other words, the reviewing court must determine whether the trial court's action was arbitrary or unreasonable. *See id.* at 242. The scope of review in determining whether the trial court abused its discretion is assayed in light of all the circumstances of the case. *See Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984).

The trial court is given the broadest discretion in imposing discovery sanctions and in choosing the appropriate sanctions. *See Downer,* 701 S.W.2d at 241; *Carr v. Harris County,* 745 S.W.2d 531, 532 (Tex. App.—Houston [1st Dist.] 1988, no writ). In determining whether to impose discovery sanctions, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but may consider everything that has occurred during the history of the litigation. *White v. Bath,* 825 S.W.2d 227, 230 (Tex.App.—Houston [14th Dist.] 1992, writ denied), *cert. denied,* —— U.S. ——, 113 S.Ct. 1868, 123 L.Ed.2d 488 (1993). Discovery sanctions imposed by a trial court will be set aside on appeal only if the court abused its discretion. *Bodnow Corp.,* 721 S.W.2d at 840. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242.

## RULE 215: ABUSE OF DISCOVERY

To determine the trial judge's guiding rules and principles in imposing sanctions for

discovery abuse, we look to the Texas Rules of Civil Procedure as well as case law. *See Downer,* 701 S.W.2d at 242. In this case, the sanction imposed by the court is among those authorized for discovery abuses under Rule 215 of the Texas Rules of Civil Procedure.[1] Because the court did not specify the provision of Rule 215 upon which it relied, we will review the portions of the rules applicable to the circumstances. *See TransAmerican Nat. Gas Corp. v. Powell,* 811 S.W.2d 913, 916 (Tex.1991). Both paragraphs 2(b)(5) and 3 of Rule 215 apply to the circumstances of this case. Paragraph 2(b)(5) of Rule 215 provides in pertinent part:

> If a party or an officer ... of a party ... *fails to comply* with proper discovery requests <u>or</u> *to obey an order* to provide or permit discovery ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (5) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or *dismissing with* or without *prejudice* the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party.

TEX.R.CIV.P. 215(2)(b)(5) (emphasis added). Paragraph 3 of Rule 215 states in part:

> If the court finds a party is abusing the discovery process in seeking, making or resisting discovery ... then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), *(5)* and (8) of paragraph 2b of this rule.

TEX.R.CIV.P. 215(3) (emphasis added).

## REVIEW OF THE LACK OF PRECEDING COURT ORDER

■ On appeal, Hamill complains the death penalty sanction of dismissing his law-

suit with prejudice is inappropriate because, prior to imposing such sanction, the trial court did not enter a court order to require him to comply with the discovery requests. He contends the appellate courts of Texas "have upheld death penalty sanctions in only a handful of cases and *only* in situations where the Court had previously entered specific Orders requiring compliance and such Order was willfully disobeyed."

We review whether the court acted without reference to any guiding rules and principles in not entering a prior court order as Hamill suggests is required. In this review, we look to the discovery rule itself and to the law of this state that interprets Rule 215. The language of Rule 215(2)(b) permits a court to dismiss an action with prejudice if a party "fails to comply with proper discovery requests *or* to obey an order to provide or permit discovery." TEX.R.CIV.P. 215(2)(b) (emphasis added). Rule 215(3) allows the court to dismiss an action with prejudice after notice and hearing if the court finds a party is abusing the discovery process in resisting discovery. TEX.R.CIV.P. 215(3). Moreover, Rule 215(1) enables a party to "apply for sanctions *or* an order compelling discovery." TEX.R.CIV.P. 215(1) (emphasis added). Subsection (b)(3) of 215(1) further explains, in pertinent part:

> [I]f a party fails:
>
> (a) to serve answers or objections to interrogatories ... or
>
> (b) to answer an interrogatory ... or
>
> (c) to serve a written response to a request for inspection ... or
>
> (d) to respond that discovery will be permitted as requested ...
>
> the discovering party may *move for an order* compelling ... an answer or answers, or inspection or production in accordance with the request, *or apply to the court ... for the imposition of any sanction* authorized by paragraph *2b* herein *without* the necessity of first having ob-ed.

---

1. Hereinafter, all rules references are to the Texas Rules of Civil Procedure unless otherwise cit-

tained *a court order* compelling such discovery.

TEX.R.CIV.P. 215(1)(b)(3) (emphasis added). Death penalty sanctions are among those authorized under paragraph 2(b) of Rule 215. TEX.R.CIV.P. 215(2)(b). Therefore, the clear language of Rule 215 permits a party to apply for the imposition of death penalty sanctions,[2] and in turn, it allows the court to impose such sanctions when merited without having a preceding .court order compelling discovery. *See* TEX.R.CIV.P. 215(1) & (2)(b)(5).

*TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991) controls this issue. The *TransAmerican* court discussed the need for a correlation between sanctions as a punishment and the purposes such sanctions are meant to satisfy. *Id.* at 917–18. To meet this end, the supreme court set forth the requirement that "courts must *consider* the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.* at 917 (emphasis added). This same requirement has been reiterated in subsequent cases from the Texas Supreme Court.[3] *See GTE Communications v. Tanner,* 856 S.W.2d 725, 729 (Tex.1993) (stating "courts must *consider* the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance") (emphasis added);

*Otis Elevator Co. v. Parmelee,* 850 S.W.2d 179, 181 (Tex.1993) (noting that "[t]he record does not reflect that the trial court *considered* the availability of lesser sanctions to curb any abuse it found") (emphasis added).

In the present case, the Texas Rules of Civil Procedure and the holding of *TransAmerican* clearly dispose of Hamill's argument. While it is generally true that death penalty sanctions are imposed after a party disobeys a court order to comply with the discovery rules, the issuance of such an order is not a prerequisite to the imposition of discovery sanctions, including death penalty sanctions. We hold Rule 215 does not require a court order to be issued compelling discovery before death penalty sanctions may be imposed.

## REVIEW OF THE DEATH PENALTY SANCTION

The legitimate purposes of discovery sanctions are threefold: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992). However, discovery sanctions must also be "just." *Id.* (citing TEX.R.CIV.P. 215(2)(b) and *TransAmerican,* 811 S.W.2d at 917). In determining whether an imposition of sanctions is

---

2. While there are no cases under the current rules for abuse of discovery on the issue of when a movant may request sanctions versus an order to compel, the substance of the issue has been visited by the Texas Supreme Court in its review of the discovery rules that pre-date Rule 215, former Rules 168 and 215a. In *Lewis v. Illinois Emp. Ins. Co.,* 590 S.W.2d 119, 120 (Tex.1979), the court considered the writ of error on whether the trial court abused its discretion in entering discovery sanctions. *See Illinois Emp. Ins. Co. v. Lewis,* 582 S.W.2d 242 (Tex.Civ.App.—Beaumont), *writ ref'd n.r.e.,* 590 S.W.2d 119 (Tex. 1979). The court clearly outlined whether a court order is required as a prerequisite to a party's motion for discovery sanctions. The *Lewis* court held when a party "wholly fails to answer any of the interrogatories, the propounding party may *immediately* move for the imposition of sanctions without first seeking and obtaining an order from the court requiring answers to interrogatories." *Lewis,* 590 S.W.2d at 120 (emphasis added); *see also Fears v. Mechanical &*

*Indus. Technicians, Inc.,* 654 S.W.2d 524, 529 (Tex.App.—Tyler 1983, writ ref'd n.r.e.).

3. An anomaly in the law on this issue can be found in *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992), which seems to suggest lesser sanctions must first be "tested" before sanctions are imposed. Because subsequent cases from the Texas Supreme Court rely upon *TransAmerican* and not upon *Chrysler,* we conclude the *Chrysler* opinion's interpretation of the requirements set forth in *TransAmerican* is not controlling on this issue. *See GTE Communications v. Tanner,* 856 S.W.2d 725, 729 (Tex.1993); *Otis Elevator Co. v. Parmelee,* 850 S.W.2d 179, 181 (Tex.1993). Therefore, we decline to follow those cases that rely upon *Chrysler* on the issue. *See Andras v. Memorial Hosp. Sys.,* 888 S.W.2d 567, 571–72 (Tex.App.—Houston [1st Dist.] 1994, writ requested) (reviewing discovery sanctions by determining "whether a lesser sanction was first imposed"); *Jones v. Andrews,* 873 S.W.2d 102, 106 (Tex.App.—Dallas 1994, no writ) (stating "a court must consider and impose relatively less stringent sanctions first").

just, the court in *TransAmerican* set forth the following two standards:

> First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both.
>
> . . . .
>
> Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.

*TransAmerican*, 811 S.W.2d at 917.

## RELATIONSHIP OF DISCOVERY OFFENSE TO DEATH PENALTY SANCTION

■ Using this standard, we first examine the relationship between the offensive conduct of Hamill and the trial court's order dismissing Hamill's case with prejudice. In early August 1993, Level requested discovery on the case brought by Hamill, including a set of interrogatories and a request for production. The deadline for responding to Level's discovery requests was early September 1993.

Over six weeks after the deadline, Level's attorney contacted Hamill's attorney to communicate he had not received any discovery and requested Hamill's attorney to advise him as to when he could expect the answers and responses. Hamill's attorney did not respond to this letter and never returned phone calls related to inquiries about the discovery request. A search of the entire record reveals no explanation for the failure to comply from August through November.

Not only did the discovery due date lapse, but Level's attorney waited an additional two months after the deadline before taking any action. Hamill's attorney made no contact with Level's attorney until three months after the discovery deadline. On December 13th, the date of the hearing for Level's motion to compel, Hamill's attorney requested an extension to the discovery deadline and offered to pay $200, which was agreed to by Level's attorney. In the letter outlining this request for an extension, Hamill's counsel informed Level's attorney for the first time that his client was injured in a car/train accident on November 6, 1993.

In the present case, it is clear both Hamill and his counsel should be faulted for the failure to comply with Level's discovery requests. At the hearing on the motion to reinstate filed by Hamill, the testimony reveals Hamill's involvement in the delay. Hamill testified he could not recall the date on which he first learned that discovery requests had been made, but recalled that it was mid-year. He later testified that it was probably a week or two before the November train accident. When asked how long it took him to provide the information, Hamill testified it took a "couple [of] months." Hamill testified it was after the car/train accident that he finally provided the answers.

Even though on redirect examination Hamill remarked he could not recollect an exact time when any of these events really took place, there is no explanation for the failure to meet the September deadline or for the failure to comply from September through November. At the hearing on the motion to dismiss, Hamill's attorney conceded both he and his client were involved in the delay.[4]

## SEVERITY OF SANCTIONS

■ A dismissal with prejudice may be justified if the discovery abuse has persisted over a long period of time and numerous efforts have been made to obtain compliance. *Carr*, 745 S.W.2d at 532–33 (citing *Ray v. Beene*, 721 S.W.2d 876, 879 (Tex.App.—

4. *Hamill's* attorney testified at the hearing: "The responses were late. I knew that. And I entered into that agreement in good faith. And it wasn't upheld. And that's partially my fault, and it's partially my client's fault, Your Honor."

Houston [1st Dist.] 1986, writ ref'd n.r.e.)). In the present case, Hamill's discovery abuse persisted over an eight-month period while Level's attorney made several attempts to obtain the requested discovery. Hamill and his attorney gave no reason to the trial court for his failure to answer any of the discovery requests for the period preceding the November accident or for the period immediately before and after the agreed discovery extension deadline of January 14, 1994.

Hamill never alleged that the interrogatories and production requests were not answered because of mistake, lack of information, lack of notice, or even neglect. *See Southern Pac. Transp. Co. v. Evans,* 590 S.W.2d 515, 517 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). The abuse here is the utter failure of the plaintiff to proceed with the cause of action and the outright denial of information to the defendant that was necessary for the attorney to defend the client. The only inference that can be drawn, then, is that the failure to answer was willful. *See id.*

Severe sanctions are sometimes necessary to prevent an abusive party from thwarting the administration of justice by concealing the merits of a case. *Braden v. Downey,* 811 S.W.2d 922, 929–30 (Tex.1991). In the presence of a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules, sanctions that are so severe as to preclude presentation of the merits of the case may be assessed. *See TransAmerican,* 811 S.W.2d at 918. Before a court may deprive a party of its right to present the merits of its case because of discovery abuse, it must determine that "a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *GTE Communications,* 856 S.W.2d at 730 (citing *TransAmerican,* 811 S.W.2d at 918). The refusal to produce any evidence material to the claim alleged creates a presumption of fact on the bad faith and untruth of a plaintiff's trial pleading. *See Tate v. Commodore County Mut. Ins. Co.,* 767 S.W.2d 219, 225–26 (Tex.App.—Dallas 1989, writ denied).

The record contains evidence to justify such a presumption in this case. At the July 13th hearing on the Motion to Reinstate, the trial court reviewed, with the attorneys, the relevant facts in the case about the date of the automobile accident, the plaintiff's hospitalization and injuries, and the November car/train accident in which the plaintiff was involved. The court permitted live testimony from Hamill regarding the accident at issue in this case, his injuries, and his subsequent accident involving a train. On cross-examination, Hamill agreed that the damage to his car rated a "one" on the lowest end of the severity-scale of one to seven. Hamill gave no explanation for the initial failure to produce discovery by the September deadline or during the month of October before Level filed a motion to compel.

We are not limited to interpreting the testimony at the hearing to discern the reasons for the trial court's decision to dismiss the case with prejudice. The trial court's own explanation in the record of why it believes death penalty sanctions are justified also assists our appellate review. *See Chrysler Corp.,* 841 S.W.2d at 852 (comparing the explanation in the record to written findings of fact). The handwritten notes of Judge James O. Mullin dated May 2, 1994, the date of the hearing on the motion to dismiss, indicate his evaluation of the case. These notes describe the court's evaluation that the case "sounds pretty weak on P[laintiff's] side." Additionally, the court noted in the record the case had been on the court's dismissal docket in December 1993. At the hearing related to the dismissal docket, counsel for Hamill had represented to the court that he would provide answers in response to the discovery requests by the agreed extension date of January 14th. The court, then, removed the case from the dismissal docket. The extension date expired, however, without any production by Hamill.

### PREJUDICE TO PROPOUNDING PARTY

If true prejudice has resulted to a party by another party's failure to cooperate during discovery, that factor should be given substantial weight in evaluation of ultimate

discovery sanctions. *Pelt v. Johnson*, 818 S.W.2d 212, 217 (Tex.App.—Waco 1991, orig. proceeding); *see Hanley v. Hanley*, 813 S.W.2d 511, 517–18 (Tex.App.—Dallas 1991, no writ). A party's prejudice can result from such conditions as the destruction of evidence, irretrievable loss of evidence, the inevitable dimming of witnesses' memories, incurring excessive burdens and costs, and other situations in which the party cannot be restored to the same status by an appropriate sanction. *See Pelt*, 818 S.W.2d at 217; *City of Dallas v. Cox*, 793 S.W.2d 701, 724–25 (Tex.App.—Dallas 1990, no writ).

At the hearing on the motion to dismiss, counsel for Level argued to the court "there is some harm that appears to be irreparable" in the case, explaining the delay had caused the irretrievable loss of a key witness. Most of the medical treatment received by Hamill was from a Fort Worth physician. After the doctor's treatment of Hamill, but before discovery was produced, this physician died unexpectedly of a heart attack. Counsel for Level is now left without the possibility of taking the physician's deposition. The trial court was able to consider this prejudice caused by the discovery delay in weighing the evidence before it and in deciding to dismiss the case with prejudice.

## LESSER SANCTION CONSIDERED

 Case-determinative sanctions may be imposed in the first instance only when they are clearly justified and it is fully apparent that no lesser sanction would promote compliance with the rules. *GTE Communications*, 856 S.W.2d at 729. Hamill contends there is nothing in the record to indicate the trial court considered lesser sanctions and the court made no finding that lesser sanctions would not be effective in order to prompt compliance with the discovery request. However, Rule 215 does not require a trial court to make specific findings before imposing discovery sanctions. *Trans-American*, 811 S.W.2d at 919 n. 9.

We look to the record before us to determine if the court considered the imposition of lesser sanctions and whether such sanctions would have been effective. *Id.* at 918. The crux of the issue in this case turns on whether the court may consider an independent agreement by the parties to impose a discovery deadline, along with monetary compensation, in evaluating the effectiveness of "lesser sanctions" before imposing death penalty sanctions.

With a motion to compel pending, Hamill offered to produce the requested discovery by January 14th and to pay $200 for the necessity of filing the motion. Once agreed to, this arrangement between the parties was, in effect, a self-imposed sanction that comports with the discovery sanctions of Rule 215. Specifically, the agreement to pay for costs comports with section 2(b)(2), which permits sanctions of "the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him." TEX.R.CIV.P. 215(2)(b)(2). Furthermore, parties may, by written agreement, modify the discovery rules. *See* TEX.R.CIV.P. 166c.

At the July hearing on the motion to reinstate, the court specifically invited counsel for Hamill to suggest any intermediate or lesser sanctions that would be available or would be applicable to the case. Hamill's attorney suggested it would be appropriate to reimburse Level for her attorney's fees and the costs and expenses in filing the motion and attending the hearing because of the delay in the response. This sanction, as a self-imposed sanction, had already proved to be ineffective because Hamill never paid the $200 he agreed to pay for the necessity of filing the motion for sanctions. Judge Mullin's handwritten notes from the date of the hearing indicate he considered the fact that Hamill "did not pay [the] $200."

In December when the case had been on the court's dismissal docket, the court was informed of the agreement between the parties to extend the discovery deadline and to require a $200 payment to Level. The court then removed the case from the dismissal docket. By inference, the trial court's motive in not dismissing the case was this agreement between the parties. Hamill's failure to comply with the agreement, by failing to pay the $200, reduced the viable options available to the trial court for sanctions as listed in Rule 215. An attorney's own word

is at least as sacrosanct as a court order to enforce compliance.[5] Therefore, we conclude the court considered this agreement as though it had been a lesser sanction imposed by the court, short of the death penalty sanction.

The prior ineffectiveness of self-imposed sanctions, such as an agreement between attorneys, may be weighed by a trial court in its consideration of whether sanctions of a lesser degree than death penalty sanctions will be effective to meet the purposes of discovery sanctions. Therefore, we hold a trial court may consider a recalcitrant party's failure to comply with a self-imposed agreement between the parties to enforce both a discovery deadline and payment of costs for the necessity of filing a motion for sanctions as a "lesser sanction" when the trial court determines whether to impose death penalty sanctions under the standards set forth in *TransAmerican. See TransAmerican,* 811 S.W.2d at 917. We also hold the trial court did not abuse its discretion by not imposing lesser sanctions where Hamill and his attorney failed to produce any discovery for eight months, failed to pay the $200 inconvenience money, and caused Level's case to be prejudiced due to the death of a key witness, in addition to his failure to communicate with Level or respond to his inquiries, and his failure to provide any plausible explanation for the delay other than Hamill's involvement in the November accident.

## EVENTUAL COMPLIANCE

■ Hamill contends the death penalty sanction of dismissing the case with prejudice was not appropriate in this case because the discovery responses were completed and delivered prior to the time of the hearing. However, eventual compliance is not determinative of whether the sanction imposed was "just." *Southern Pac. Trans. Co.,* 590 S.W.2d at 518; *Carr,* 745 S.W.2d at 532. For example, in *Southern Pacific Transportation Co. v. Evans,* the court heard a motion for interlocutory default judgment. At the hearing, the court had before it all the evidence

concerning the recalcitrant party's refusal to timely and completely answer interrogatories. Just six days before the hearing, the responding party finally completed and tendered the remaining answers. Nonetheless, the court determined the trial court "could have concluded that the appellant's course of conduct prevented appellee from proving her cause of action." *Southern Pac. Trans. Co.,* 590 S.W.2d at 519. The appellate court concluded no abuse of discretion was shown and affirmed the actions of the trial court. *Id.*

Hamill asserts in his brief on appeal that "prior to the hearing" on the Motion for Sanctions, he filed answers to Level's discovery requests. The record indicates this discovery was filed *twenty minutes* before the hearing on May 2nd. Hamill's eventual production of discovery does not preclude the court from imposing sanctions. Level's interrogatories were not answered until eight months after the time had expired under Texas discovery rules. Additionally, Hamill's attorney did not fully comply with the discovery agreement entered into on December 13th because, to date, he still has not paid the $200 inconvenience money he agreed to pay to recompense Level for the necessity of filing a motion on the matter.

The trial court may look to all the evidence in the case in determining sanctions. *Southern Pac. Trans. Co.,* 590 S.W.2d at 518. The May 9th order dismissing Hamill's case with prejudice was entered after the trial court considered all the events that had occurred in the case, not merely the fact that Hamill finally complied with the discovery request.

## CONCLUSION

In exercising its discretion in determining the appropriate sanction, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but can consider everything that has occurred during the history of the litigation. *Downer,* 701 S.W.2d at 241; *Overstreet v. Home Indem. Co.,* 747 S.W.2d 822, 826 (Tex.

---

**5.** The Texas Lawyer's Creed adopted by the Texas Supreme Court in 1989 sets forth conduct guidelines for Texas attorneys, including "My word is my bond." Texas Lawyer's Creed—A Mandate for Professionalism (adopted by the Supreme Court of Texas and the Court of Criminal Appeals of Texas, Nov. 7, 1989), reprinted in TEXAS RULES OF COURT 487 (West 1995).

App.—Dallas 1987, writ denied); *Medical Protective Co. v. Glanz*, 721 S.W.2d 382, 388 (Tex.App.—Corpus Christi 1986, writ ref'd). A review of the record shows that the trial court could have concluded the conduct of Hamill was willful and that such conduct prejudiced Level. *See Southern Pac. Trans. Co.*, 590 S.W.2d at 519. The trial court was entitled to "protect itself from the burden, and litigants in this and other cases from the delay, of repeatedly forcing appellant to comply with discovery rules." *Carr*, 745 S.W.2d at 533.

Under the facts of this case, the trial court followed guiding rules and principles of law in determining what sanctions were appropriate. We conclude the trial court did not abuse its discretion when it sanctioned Hamill for abuse of the discovery process under Rule 215 by dismissing the action with prejudice. We overrule Hamill's point of error.

We affirm the judgment of the trial court.