Avila5 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00001-CV







Martha Avila, Appellant



v.



Texas Property and Casualty Insurance Guaranty Association and Richard Dennis,


Special Deputy Receiver, under contract to J. Robert Hunter, Receiver for


Indemnity Underwriter Lloyds, in Receivership, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 93-07987, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 Appellant, Martha Avila, appeals from the district court's dismissal with
prejudice of her case against appellees (hereinafter "Receiver"). The district court struck
appellant's pleadings and dismissed her case (imposed "death penalty sanctions") after Avila
abused discovery by withholding the names of four persons with information relevant to the
case. Avila contends that these sanctions are unjust, and asks that we reverse the trial court's
order. Because we believe that the trial court abused its discretion in ordering death penalty
sanctions, we reverse its decision.



Background


 In 1989, Avila was involved in an automobile accident with a truck. Avila
brought suit in Bexar County against the truck driver, the company for which the driver
worked (the insured), and the owner of the company. At trial in 1992, the jury awarded Avila
$380,000. Apparently Avila did not know that the company's insurer, Indemnity
Underwriters Lloyds, had been placed in receivership prior to trial, because she failed to join
the Receiver as a party. When she learned of the receivership and filed a proof of claim, the
Receiver formally rejected her claim. Because the Receiver was not a party to the earlier suit,
Avila sued the Receiver in this trial de novo in July 1993.

 In the course of discovery for this second suit, the Receiver served appellant
with requests seeking prior statements and the identity of persons with knowledge of relevant
facts about the underlying automobile accident. Because Avila did not respond timely and did
not request or receive any extension for filing her answers, the Receiver filed a motion for
summary judgment based on deemed admissions. After a hearing, the district court granted
Avila leave to file responses without objections, and the Receiver withdrew its motion for
summary judgment. Avila supplemented her answers to interrogatories three times, once in
response to the Receiver's motion to compel.

 Approximately two weeks before the case was to be tried, the Receiver learned
that Avila had failed to disclose the names of four people who had been present at the scene of
the accident. The Receiver accidentally discovered these names when it subpoenaed the
defendant-truck driver's statement from Avila's insurer, State Farm Insurance Company. State
Farm allowed the Receiver to review the entire contents of its file relating to the accident. 
The file contained a recorded statement which appellant had given to State Farm approximately
one month after the accident in 1989. In this statement, Avila provided the names of four
people who had witnessed or heard the impact of the accident. Avila had not given these
names to the defendant in the Bexar County trial, did not provide them to the Receiver in
response to interrogatories, and failed to produce the recorded statement in response to a
request for production.

 At a hearing on its motion for sanctions several days before trial, the Receiver
argued that Avila's failure to disclose the witnesses' names deprived the Receiver of the
opportunity to adequately prepare a defense and that nothing short of striking appellant's
pleadings and dismissing her case would remedy the resulting prejudice and properly punish
Avila. The trial court granted the Receiver's motion for death penalty sanctions. In her single
point of error, appellant claims that the trial court erred by granting unjust sanctions.



Discussion and Holding 


 The standard of review for a trial court's imposition of discovery sanctions is
abuse of its discretion. Bodnow Corp. v. City of Hondo, 721 S.W.2d 839, 840 (Tex. 1986). 
The test for abuse of discretion is whether the court acted without reference to any guiding
rules and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986). In other words, the reviewing court must
determine whether the trial court's action was arbitrary or unreasonable. See id. at 242. The
scope of review in determining whether the trial court abused its discretion extends to all the
circumstances of record in the case. See Smithson v. Cessna Aircraft Co., 665 S.W.2d 439,
443 (Tex. 1994). The trial court is given the broadest discretion in choosing and imposing
appropriate discovery sanctions. See Downer, 701 S.W.2d at 241.

 For this court to affirm the trial court's imposition of the death penalty sanction,
we must find that the appellate record reveals sufficient facts to show that the trial court could
have acted rationally in an exercise of its discretion. See Landon v. Jean-Paul Budinger, Inc.,
724 S.W.2d 931, 935 (Tex.App.--Austin 1987, no writ). Two standards mark the bounds of
the trial court's discretion in imposing severe sanctions: first, a direct relationship must exist
between the offensive conduct and the sanction imposed; and second, the sanction imposed
must not be excessive. TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917
(Tex. 1991).

 In contemplating a sanction that precludes presentation of a case on its merits, a
court is also limited by due process considerations. Discovery sanctions cannot be used to
adjudicate the merits of a party's claims or defenses unless a party's hindrance of the
discovery process justifies a presumption that its claims or defenses lack merit. Id. 
Furthermore, very severe sanctions should not be assessed absent a party's flagrant bad faith
or counsel's callous disregard for the responsibilities of discovery. Id.

 The first prong of TransAmerican requires that a just sanction be directed against
the abuse and toward remedying the prejudice inflicted on the innocent party. Such a sanction
should be visited only upon the offender--counsel, the party, or both. Id. We defer to the trial
court's judgment that Avila herself was responsible for the discovery abuse in this case and that
the sanction was therefore properly imposed against her. The relevant information was withheld
by Avila, as her attorney was apparently unaware of the four witnesses or the statement Avila had
given to State Farm. However, we do not understand how the trial court could reasonably find
that the sanction was directed toward remedying the prejudice caused the Receiver; under the
circumstances of this trial de novo, the Receiver has demonstrated little actual harm to its case as
a result of Avila's conduct.

 If true prejudice has resulted to a party by another party's failure to cooperate
during discovery, that factor should be given substantial weight in the evaluation of ultimate
sanctions. Hamill v. Level, 900 S.W.2d 457, 463 (Tex. App.--Fort Worth 1995, no writ h.); Pelt
v. Johnson, 818 S.W.2d 212, 217 (Tex. App.--Waco 1991, orig. proceeding). A party's prejudice
can result from such conditions as the destruction of evidence, irretrievable loss of evidence, the
inevitable dimming of witnesses' memories, and the accrual of excessive burdens and costs. Id.

 The Receiver argues that Avila's concealment of four witnesses prejudiced its case
by inhibiting the Receiver's ability to prepare an adequate defense. The crux of the Receiver's
position is that because the testimony of the witnesses was material to the issue of fault in this
case, and the delay had rendered the witnesses' testimony stale and unreliable, the only way for
the court to address this prejudice was to dismiss Avila's cause of action with prejudice. We
disagree.

 No evidence other than the State Farm file containing Avila's statement was
introduced at the hearing on the motion for sanctions; the court heard only argument of counsel. 
The record therefore does not reveal any factual information concerning what the substance of the
witnesses' testimony would have been had Avila complied with discovery and disclosed their
identities at the appropriate time. Discovery in the Receiver's case began in 1993, four years
after the accident occurred, and we may only consider Avila's conduct in the present case. There
is little reason to believe that the witnesses would have been much easier to locate or their
memories less stale or unreliable if Avila had revealed their names eleven months earlier when
discovery was initially propounded. (1) Based on the record, neither we nor the trial court knows
what these witnesses saw, heard, or remember about this accident, nor do we know what other
evidence exists in this case. Moreover, the record does not indicate to what extent the factual
circumstances surrounding the accident were in dispute. With so much uncertainty in the record,
at the very least the trial court should have postponed a decision on death penalty sanctions until
it could ascertain the pertinence of the witnesses' testimony to whatever facts were in dispute. 
Without this information, the trial court abused its discretion in striking Avila's pleadings with
prejudice.

 The second prong of the TransAmerican test requires that a discovery sanction not
be excessive in relation to the abusive conduct. The sanction should be no more severe than
necessary to satisfy its legitimate purposes, and the trial court should consider the availability of
less stringent sanctions to promote compliance. The purposes of discovery sanctions are to (1)
secure the parties' compliance with the rules of discovery, (2) deter other litigants from violation
of the discovery rules, and (3) punish parties that violate the discovery rules. Bodnow Corp., 721
S.W.2d at 840.

 We note that the trial court in this case did consider lesser sanctions before
dismissing the case, but was apparently convinced by the Receiver's argument that lesser sanctions
would not be effective in curing the spoilation of evidence. But the lengthy passage of time since
the accident in 1989 cannot be charged against Avila's discovery abuse in this case, which has
delayed discovery by a matter of months not years. As Avila argued at the hearing on her motion
for new trial, the court could have required her to bear the cost of finding the witnesses and taking
their depositions. On motion for new trial, Avila informed the court that she had located three
of the four witnesses and was still looking for the fourth. This fourth witness, the driver of a
vehicle in the lane adjacent to Avila at the time of the accident, was difficult to locate because his
company had gone out of business and its records had been lost; there is no evidence in the record
of how long ago these records were lost. The most valuable witness regarding liability, the driver
of the truck that collided with Avila, was unavailable not because of any discovery abuse but
because he had been deported after the accident.

 Since the supreme court's decision in TransAmerican, this court has never upheld
death penalty sanctions when the guilty party was not afforded at least one opportunity either to
comply with a court order or to respond to a lesser sanction. In our most recent opinion on the
subject, we upheld a death penalty sanction only after the sanctioned party refused to comply with
numerous opportunities to correct discovery abuses and after several lesser sanctions had proven
unsuccessful. Thacker v. State, 852 S.W.2d 77, 81 (Tex. App.--Austin 1993, writ denied). Avila
was afforded no second chance and no lesser sanction.

 The final question posed by the supreme court in TransAmerican implicates the due
process considerations that arise when a party is denied the opportunity to have a case heard on
its merits. Discovery sanctions cannot be used to adjudicate the merits of a party's claims or
defenses unless a party's hindrance of the discovery process justifies a presumption that its claims
or defenses lack merit. TransAmerican, 811 S.W.2d at 918.

 The Receiver argues that by failing to mention the witnesses who came to her
assistance and might comment on liability, Avila let evidence "die or disappear," and thus the trial
court properly presumed her claim lacked merit. Avila argues that without any evidence of the
prejudice that her discovery abuse in this case actually caused the Receiver, and without testing
lesser sanctions to remedy that prejudice, the trial court could not properly presume that this
evidence would be so adverse that her claim lacked all merit. We agree. We hold under the facts
of this case as they are now developed, that the trial court was not justified in presuming that
Avila's claims lack all merit, sufficient to deprive her of her day in court.

 Although the unusual circumstances of this case presented the trial court with fewer
effective remedies to promote compliance and cure prejudice, outcome determinative sanctions
may be imposed in the first instance only when it is fully apparent that no lesser sanction would
promote compliance. GTE Communication v. Tanner, 856 S.W.2d 725, 729 (Tex. 1993). Any
doubts must be resolved in favor of reaching a decision on the merits. Hanley v. Hanley, 813
S.W.2d 511,518 (Tex. App.--Dallas 1991, no writ).

 Because the trial court did not have sufficient facts on which to assess the harm
caused by Avila's conduct in the present case and did not impose any lesser sanctions as a way
to remedy the prejudice or promote compliance, we hold that the trial court abused its discretion
by striking Avila's pleadings. We reverse the decision of the trial court and remand for further
proceedings.



 

 Bea Ann Smith, Justice


Before Chief Justice Carroll, Justices Jones and B. A. Smith

Reversed and Remanded

Filed: November 22, 1995

Do Not Publish

1.   The Receiver suggests that we ought to consider the time that has elapsed since the
1989 Bexar County trial in determining the extent to which the evidence has been spoiled
and the Receiver's case prejudiced. We do not agree. The time period with which we are
here concerned is the eleven months between September 1993, when Avila was required to
serve written answers and responses to interrogatories and August 1994, when the
Receiver discovered Avila's statement to State Farm.


quired her to bear the cost of finding the witnesses and taking
their depositions. On motion for new trial, Avila informed the court that she had located three
of the four witnesses and was still looking for the fourth. This fourth witness, the driver of a
vehicle in the lane adjacent to Avila at the time of the accident, was difficult to locate because his
company had gone out of business and its records had been lost; there is no evidence in the record
of how long ago these records were lost. The most valuable witness regarding liability, the driver
of the truck that collided with Avila, was unavailable not because of any discovery abuse but
because he had been deported after the accident.

 Since the supreme court's decision in TransAmerican, this court has never upheld
death penalty sanctions when the guilty party was not afforded at least one opportunity either to
comply with a court order or to respond to a lesser sanction. In our most recent opinion on the
subject, we upheld a death penalty sanction only after the sanctioned party refused to comply with
numerous opportunities to correct discovery abuses and after several lesser sanctions had proven
unsuccessful. Thacker v. State, 852 S.W.2d 77, 81 (Tex. App.--Austin 1993, writ denied). Avila
was afforded no second chance and no lesser sanction.

 The final question posed by the supreme court in TransAmerican implicates the due
process considerations that arise when a party is denied the opportunity to have a case heard on
its merits. Discovery sanctions cannot be used to adjudicate