**ESTATE OF Coral Elizabeth RIGGINS, Deceased.**

No. 07–95–0252–CV.

Court of Appeals of Texas, Amarillo.

June 27, 1996.

Opinion Clarifying Decision and Ordering Publication Aug. 27, 1996.

Rehearings Overruled Aug. 27 and Sept. 30, 1996.

Scott Sherwood, Sherwood and Sherwood, Panhandle, for appellee.

Before BOYD and QUINN, JJ., and REYNOLDS, Senior Justice.*

BOYD, Justice.

In three points of error, Harry Edward Riggins and William Lee Riggins (proponents) challenge trial court discovery sanctions which, they claim, "assured that the innocent deceased's will would be overturned as surely as if the court had set it aside by entering a default judgment." As independent co-executors of the estate of Coral Elizabeth Riggins (Coral), they claim the trial court 1) erred in granting sanctions barring all testimony and evidence relating to the drafting and signing of Coral's will and limiting testimony to a single witness, 2) "denied justice and due process in granting sanctions barring all testimony and evidence relating to the drafting and execution" of the will and limiting the testimony to a single witness, and 3) erred in entering judgment setting aside Coral's will and withdrawing letters testamentary issued to them as independent executors named in her will. For reasons we later discuss, we affirm the judgment of the trial court.

Because of the questions presented in this appeal, a somewhat detailed discussion of the procedural history of the case is necessary. The will was executed February 13, 1991. Coral died April 28, 1991, and an application for the probate of her will and for letters testamentary was filed May 6, 1991. In her will devising all her property to William and Harry Riggins, Coral included the following paragraph:

> In executing this will and making this disposition of my property, I am not unmindful of my daughter, ANNIE LOU FOSTER. However, the actions of my daughter, ANNIE LOU FOSTER, during my lifetime have caused me considerable grief and despair. Further, she has already received substantial amounts of money during my lifetime. Therefore, it is my desire that ANNIE LOU FOSTER not

Charles R. Watson, Jr., Carr, Fouts, Hunt & Wolfe, Amarillo, for appellant.

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

take any portion of my estate upon my death.

Annie Lou Foster (contestant) filed an "Opposition to Probate of Will and to Issuance of Letters Testamentary" on May 20, 1991. In that instrument, she claimed that on the day the will was executed, her mother lacked testamentary capacity and was unduly influenced; however, on February 27, 1992, Annie Lou non-suited her opposition. On April 15, 1992, the will was admitted to probate and letters testamentary were authorized to be issued.

On September 22, 1992, as executors of Coral's estate, Harry and William filed suit against Amwest Savings Association and Annie Lou Foster. In the suit, they contended Annie Lou forged "a large number of checks on the account held in the name of Coral Elizabeth Riggins...." Annie Lou then filed an application to set aside the order probating the will on January 29, 1993, making the same testamentary and undue influence claims she had made originally. On June 6, 1993, she filed her First Motion for Continuance in which she averred that despite due diligence, her attorneys needed "extra time to complete discovery...."

On March 25, 1994, Annie Lou filed her first set of written interrogatories and requests for production. In that instrument, she specified that "the answers shall be served upon the first business day after the expiration of thirty (30) days after the service of said Interrogatories." She also requested production of the items requested on or before April 29, 1994. Nothing was received by either specified date.

On May 3, 1994, Annie Lou's attorney sent Harry and William's attorney, Alan Bransgrove, a letter demanding answers prior to May 10, 1994 at 5:00 p.m. On May 18, Bransgrove faxed an unsigned and unsworn draft of answers to Annie Lou's attorney, along with a handwritten note which stated, "I anticipate having a notarized signature by week's end and don't believe there will be any changes." A June 6, 1994 trial setting was continued by agreed motion, then Annie

Lou filed a first amended original application to set aside the will on November 18, 1994, and a second one on November 21, 1994.

Harry and William moved for another continuance on November 21, 1994, contending their attorney was incapable of making "final preparations for trial....." The motion was granted. On December 2, 1994, Annie Lou filed "Motion for Sanctions for Proponents' Failing to Serve Answers to Contestant's Interrogatories and to Serve Responses to Contestant's Requests for Production." She averred that the faxed attempt to answer on May 18 did not comply with Rules 166b(6) and 168 of the Texas Rules of Civil Procedure,[1] and the failure to properly answer the interrogatories and respond to the requests for production "made it impossible for [her] to properly prepare her case for trial and have greatly prejudiced [her]" in the case. Annie Lou then requested a hearing and asked that the court impose sanctions pursuant to Rule 215:

> ... against WILLIAM LEE RIGGINS and HARRY EDWARD RIGGINS, Individually and as Co–Independent Executors of the Estate of CORAL ELIZABETH RIGGINS, Deceased, as are just and equitable, including but not limited to:
>
> 1. An Order that the facts in the captioned cause shall be taken to be established for the purposes of this cause in accordance with the claim of Movant.
>
> 2. An Order refusing to allow Respondents to support their claims on [sic] defenses in this cause or to introduce evidence in this cause through any of the parties or their witnesses or to oppose Movant's claims or defenses in this cause.
>
> 3. An Order striking the pleadings of Respondents and rendering a judgment by default against the Respondents, which judgment will set aside the Order of March 9, 1992[sic] Admitting the Will of CORAL ELIZABETH RIGGINS to probate.

Harry and William filed a motion for continuance on December 9, 1994, requesting that a December 12, 1994 trial setting be

---

1. Later references to rule numbers are to those rules of the Texas Rules of Civil Procedure unless

otherwise specifically designated.

vacated and rescheduled because their attorney had gall bladder surgery December 6, 1994. The continuance was granted.

On January 17, 1995, a document entitled "Co–Independent Executors' Answers to Contestant's First Set of Interrogatories and Production Requests" was filed. Although the instrument purports to be on behalf of both William and Harry, individually and as co-independent executors of the estate, only Harry signed the document. In response to Annie Lou's request for sanctions, William and Harry filed a reply stating they had complied with the discovery requests to the best of their ability, and any undue delay in furnishing the final verified responses was due to the chronic illness of their counsel.

In their reply, they requested that any sanctions be assessed against counsel. Harry and William also contended that much of the information sought by Annie Lou in the interrogatories and requests for production had already been furnished to her through other forms of discovery, such as oral depositions of expert witnesses and access to bank account information.

A hearing on the first motion for sanctions was held on February 2, 1995. The events heretofore detailed were described to the trial judge, along with testimony from Annie Lou's attorney about the bank statements and checks he had received from Bransgrove. He argued that he had not received any documents "concerning Mrs. Riggins' bank statements prior to her death, after the death of her husband, nothing concerning the two Riggins' boys bank statements and only about six or seven months, eight months; something like that, in '94 for the estate of Coral Elizabeth Riggins."

Bransgrove agreed to the sequence of events advanced at the hearing and explained that he had the tax returns for the estate, various checks relating to the estate, and bank statements relating to Harry and William; however, he stated, "my people have not been able to locate what is understandably critical to [Annie Lou's] case," *i.e.,* various canceled checks and deposit slips relating to Coral's accounts before she died. He then said he had been in contact with people at the First National Bank of Panhandle and the State National Bank of Groom who said regenerating these statements (if they could find them) would be very expensive and time consuming. He also said the Randall County District Attorney's office had several of the requested checks because of the forgery charges against Annie Lou; however, the district attorney's office was unable to locate the checks. Bransgrove stated, "I did not realize that I had not filed the responses to the interrogatories in the fall." When the trial judge asked him what he would have him do, he replied:

Your Honor, I do believe that certainly there was undue delay in responding, but I think it wasn't the fault of my client, if anybody it was my fault, and it was my fault primarily due to my illness.

\* \* \*

Your Honor, if the Court would choose to impose sanctions, I would suggest that they be imposed against me in the form of some monetary sanctions rather than the relief that they're asking, because there is evidence that has been presented in this case, Your Honor, at the hearing admitting the will to probate, and additionally in the form of deposition testimony, it's clear that there is at least an issue of fact with regard to her having total faculties at the time she executed the will, her having every reason in the world, ... to have modified her will and made a new will that cut her out.

\* \* \*

Your Honor, I guess what I'm saying and to get to the point, I think it would be unfair and prejudicial to my clients to totally gut their case and make everything deemed as admitted against us.

It certainly wasn't their fault, and I also think that that would be really a pretty harsh sanction in that I'm doing my best to get everything to him, and I furnished him everything that we have in our possession.

In response, Annie Lou's attorney argued that William's failure to sign the interrogatories he had received was evidence of Wil-

liam's culpability, and that there was evidence the parties knew of the delay. He acknowledged receipt of verified answers postmarked January 16, but contended because only one party signed them and interrogatory answers may only be used against the party answering them, striking the witness who failed to sign was an appropriate and lesser sanction. Her attorney averred the checks and documents were an important part of Annie Lou's case because she was trying to show "that the amount of money that they say we cheated the mom out of was less than all the money mama had given the boys." Without the requested financial information, there was "no way of putting that into the record."

As a result of the hearing on the first motion for sanctions, the trial court found Bransgrove and "the parties were at fault because factually they had to have knowledge as early as 1991 of documents that were requested and at least possibly necessary." However, he refused to strike the pleadings, commenting there were some bad faith acts committed by the parties, and finding "conscious disregard for the guidelines set forth in the code and the Rule of Civil Procedure." The trial judge then concluded:

> With that in mind, I will—either of the two, whichever is appropriate, because there is a question about whether witnesses have been designated or not, I will not allow the late designation of witnesses if, in fact, they were not timely designated. If they were, I will strike all witnesses, except the parties for the Proponents. And we will go to trial the morning of the 14[th].

A second motion for sanctions was filed on February 9, 1995. Annie Lou took issue with Bransgrove's representations at the first hearing regarding his contact with the financial institutions in Groom and Panhandle. She stated that she contacted Lanna Brown, an employee at State National Bank of Groom, who said no one from Bransgrove's office had contacted her bank regarding Riggins' bank statements. She also said Dianna McGill, who worked for First National Bank in Panhandle, told her that bank had been contacted on or about February 2, 1995, and

could produce the requested bank statements for $1,680. Bransgrove was to pay half of this amount on or about February 7, 1995 in order to start the process, but had not done so as of 10:00 a.m. February 9. Annie Lou requested another hearing and similar sanctions that included ordering facts established, striking pleadings, and granting attorney's fees.

A hearing on this second motion was held February 13, 1995. Brown and McGill testified, as did William, Harry and Bransgrove. Each witness detailed his or her efforts, and Bransgrove's efforts to obtain the requested bank statements and checks. At the conclusion of the hearing, the trial judge stated:

> Mr. Riggins, so there is no question just by way of clarification of my position, all this stuff needs to be provided as soon as possible because if it's not—now we're back here the week of March 20 [for trial]. If it's not provided in a timely manner and I will set a deadline, I'm not sure, because that may depend on how long the banks take or what's already there, but if for any reason that's within the control of either you or your brother or Mr. Bransgrove, and I'm not being mean, I'm just trying to say let's get this so we'll know where we are, I will have to strike the pleadings, so in essence there is a default judgment granted to the other side.

> That's what they've requested this time and we have not done that but we're at the point it's got to be ended up because there are two more cases hinging somewhat on the outcome of this case and they have been pending a long time.

The trial court then entered a written order, finding that as of that date, William, Harry and Bransgrove "still" had not furnished the required answers to interrogatories and responses to requests for production, and were at fault. The trial court then ordered that the proponents (appellants) not be allowed to introduce evidence through any of their witnesses but the parties, and that this order continue in full force and effect until the conclusion of the case. The trial court also awarded $3,000 in attorney's fees to Annie Lou.

A third motion for sanctions for failure to answer interrogatories was filed March 21, 1995, the day of trial. Similar requests for orders establishing facts or striking the pleadings were made. At that hearing, Bransgrove testified that the failure to file William Riggins' answers to interrogatories was an oversight and was "totally my mistake." He asserted the answers were currently in his vehicle and had been reviewed and signed by William, so he was prepared to file them immediately. He also contended that William's answers were identical to Harry's answers, so Annie Lou would not be surprised or prejudiced by their late filing. The trial judge acknowledged that he had formerly said he would grant death penalty sanctions for further non-compliance with discovery rules, but only struck William Riggins from the witness list, saying, "He is a party but I acknowledge that even he being a party ... his answers [are] not filed in the proper form after at least ... two if not three or up to five notices to furnish information in the proper form." Bransgrove then objected and asked that William's answers be filed for the purposes of appeal.

Although appellants articulate three separate points of error, they address them in one argument. In sum, they contend the trial court erred in granting sanctions barring all testimony and evidence but the testimony of Harry Riggins, and such sanction denied justice and due process resulting in an incorrect judgment setting aside Coral's last will and withdrawing letters testamentary. Specifically, they argue that "entry of sanctions which precluded the presentation of essential evidence on the merits constituted reversible error in the absence of prior attempts to secure compliance short of entry of sanctions," and "[n]o lesser sanctions short of precluding presentation of the merits were considered, let alone invoked before death penalty sanctions were imposed." As appellants did in their argument, we will consider and discuss the three points together.

■ A trial court may impose sanctions on any party that abuses the discovery process. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986), *citing* Tex.R. Civ. P. 215. Discovery sanctions imposed by

a trial court will be set aside only if the trial court clearly abused its discretion. *Id.* Thus, as a reviewing court, we must determine whether the trial court's actions were arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In doing so, we must remember that in making its determination of whether to impose discovery sanctions, the trial court is not limited to considering only the specific violation for which the sanctions are finally imposed, *Gentry v. Weaver Development Co.*, 909 S.W.2d 606, 610 (Tex.App.—Fort Worth 1995, no writ), and may consider everything that has occurred during the litigation. *Id.; citing White v. Bath*, 825 S.W.2d 227, 230 (Tex. App.—Houston [14th Dist.] 1992, writ denied), *cert. denied*, 507 U.S. 1039, 113 S.Ct. 1868, 123 L.Ed.2d 488 (1993).

Rule 168 governs interrogatories. With respect to the time within which they must be answered, the rule provides:

The party upon whom the interrogatories have been served shall serve answers on the party submitting the interrogatories within the time specified by the party serving the interrogatories, which specified time shall not be less than thirty days after the service of the interrogatories.... The court, on motion and notice for good cause shown, may enlarge or shorten the time for serving answers or objections.

Tex.R. Civ. P. 168(4).

Rule 167 governing discovery and production of documents provides that the party upon whom the request is served "shall serve a written response and objections, if any, within 30 days after the service of the request...." Tex.R. Civ. P. 167(2).

■ Reviewing the sequence of events, Annie Lou filed her first set of written interrogatories and requests for production March 25, 1994, specifying that "the answers shall be served upon the first business day after the expiration of thirty (30) days after the service of said Interrogatories." She also requested production of the items requested on or before April 29, 1994. Neither were received by the specified date, but un-

signed and unsworn answers were faxed to her attorney on May 18, 1994. There were also no objections or motions for protective orders claiming the requested documents were not in their possession. The June 6 trial setting was then continued and reset for "trial week" in August. The record does not reveal what happened to the trial setting in August, but on December 9, one week after the motion for sanctions was filed, a December 12 setting was continued to the next regularly scheduled docket. Responses to the interrogatories and requests for production, signed and sworn to by Harry, were not filed until January 17, 1995, over eight months after they were due under the rules.

Appellants contend Annie Lou filed a motion seeking death penalty sanctions for the failure to serve *signed* interrogatory responses and responses to requests for production, "even though an unsigned copy had been faxed to counsel and the estate had signed the original months prior to the motion and hearing." Rule 168(5) requires that answers to interrogatories be in writing under oath, served on all parties or their attorneys, and signed and verified by the person making them. The faxed response was late, and it was neither signed or sworn, so it failed to meet some of the formal requirements of Rule 168. Failure to meet the formal requirements of Rule 168 when supplementing discovery responses has been held to make the attempted response insufficient as a matter of law, thereby invoking the mandatory sanction of Rule 215(5), which requires exclusion of the evidence/testimony at issue. *See Varner v. Howe,* 860 S.W.2d 458, 463 (Tex. App.—El Paso 1993, no writ) and *Johnson v. Berg,* 848 S.W.2d 345, 350 (Tex.App.—Amarillo 1993, no writ). However, this is not a "failure to supplement" case.

Appellants seem to rely on the fact that Annie Lou received unsigned and unverified responses long before any hearing on sanctions and before trial, seemingly arguing that there was then no surprise or prejudice because the witness list was the same for both William and Harry, and was never altered before trial. However, determining whether a party is really surprised by an offer of testimony not formally identified in discovery is difficult. *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 915 (Tex.1992). As the supreme court explained in *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669, 671–72 (Tex.1990):

> A party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory. Thus, even the fact that a witness has been fully deposed, and only his or her deposition testimony will be offered at trial, is not enough to show good cause for admitting the evidence when the witness was not identified in response to discovery.

*Id.* at 671.

Because the responses faxed to Annie Lou's attorney on May 18, 1994 did not comply with the rules, they were of no effect, as they could have been altered or supplemented before being formally and correctly provided in compliance with the rules. Formal answers on behalf of the estate and Harry Riggins, upon which Annie Lou could rely, were not properly filed until January 17, 1995.

Section 240 of the Probate Code provides that if there is more than one executor of an estate at the same time, "the acts of one of them as such executor or administrator shall be as valid as if all had acted jointly. . . ." Tex. Prob.Code Ann. § 240 (Vernon 1980). The interrogatories propounded by the contestant were addressed to "WILLIAM LEE RIGGINS and HARRY EDWARD RIGGINS, Individually and as Co–Independent Executors of the ESTATE OF CORAL ELIZABETH RIGGINS." Thus, because the responses filed on January 17, 1995, were signed and sworn to by Harry, they constituted a sufficient response on behalf of the estate and Harry. However, because William never filed signed and sworn answers, he completely failed to comply with the interrogatories and requests for production. Additionally, Harry and the estate failed to produce certain requested documents and did not request or obtain a protective order excusing the failure.

■ We further note that Annie Lou's decision to pursue sanctions instead of filing a

motion to compel is authorized by Rule 215(1).[2] A party has no duty to remind another party to abide by the Rules of Civil Procedure. *Sharp,* .784 S.W.2d at 671–72.

Annie Lou argues that Rule 215(5) applies to failure to respond to discovery as well as failure to supplement answers to discovery. Rule 215(5)[3] is a mandatory rule that operates as an automatic exclusion of evidence unless good cause is shown to excuse its application. This court has concluded that Rule 215(5) "does not address *untimely responses* to discovery either explicitly or implicitly. Instead, untimely responses are subject to Rule 215(3)." *First State Bank of Miami v. Fatheree,* 847 S.W.2d 391, 394 (Tex.App.—Amarillo 1993, writ denied); *citing Alvarado,* 830 S.W.2d at 915.

Rule 215(3) provides:

> If the court finds a party is abusing the discovery process in seeking, making or resisting discovery or if the court finds that any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing, or that a response or answer is unreasonably frivolous or made for purposes of delay, then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs, (1), (2), (3), (4), (5), and (8) of paragraph 2b of this rule. Such order of sanction shall be subject to review on appeal from the final judgment.

Tex.R. Civ. P. 215(3).

Rule 215(2)(b) provides in pertinent part:

> If a party . . . fails to comply with proper discovery requests or to obey an order to provide or permit discovery, . . . the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

> (2) An order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him;

> (3) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

> (4) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

> (5) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party;

> (8) In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him, or both, to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Such an order

---

2. A party, upon reasonable notice to other parties and all other persons affected thereby, may apply for sanctions or an order compelling discovery
> (3) if a party fails:
> (a) to serve answers or objections to interrogatories submitted under Rule 168, after proper service of the interrogatories; or
> (c) to serve a written response to a request for inspection submitted under Rule 167, after proper service of the request; or
> (d) to respond that discovery will be permitted as requested or fails to permit discovery as requested in response to a request for inspection submitted under Rule 167;
> Tex.R. Civ. P. 215(1)(b)(3).

3. Rule 215(5) provides

> A party who *fails to respond to* or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

Tex.R. Civ. P. 215(5).

shall be subject to review on appeal from the final judgment.

Tex.R. Civ. P. 215(2)(b).

A trial court abuses its discretion if the sanction it imposes does not further one of the purposes of discovery sanctions: 1) securing the parties' compliance with the rules of discovery, 2) deterring other litigants from violating the discovery rules, 3) punishing parties that violate the rules of discovery. *Bodnow Corp.*, 721 S.W.2d at 840. Further, the supreme court has set out a two-prong test to determine whether a sanction is "just." First, there must be a direct relationship between the offensive conduct and the sanction imposed. *TransAmerican Natural Gas v. Powell*, 811 S.W.2d 913 (Tex. 1991). This includes attempting to determine whether the offensive conduct is attributable to counsel, the party, or both. In *TransAmerican*, the supreme court recognized that this determination will not be an easy task, as a party must bear some responsibility for counsel's discovery abuses when the party is or should be aware of counsel's conduct, but a party should not be punished for counsel's conduct in which the party is not implicated, apart from having entrusted to counsel his legal representation. *Id.* at 917. The second prong of the test requires that discovery sanctions "fit the crime." *Id.* Sanctions should be no more severe than necessary to satisfy its legitimate purposes, so courts must consider the availability of less stringent sanctions and whether they would fully promote compliance. *Id.* The record must reflect that the court considered the availability of lesser sanctions. *GTE Communications v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993), *citing Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (1993).

Citing *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991), appellants argue the trial court did not consider lesser sanctions by striking all of the estate's witnesses but William and Harry, and that this was "exclusion of essential evidence" that has been classified as death penalty sanctions. In their second point of error, they contend the trial court "denied justice and due process in granting sanctions barring all testimony and evidence relating to the drafting and execution" of the will and limiting the representative of her estate to the testimony of a single witness. Further, during the hearings on the motions for sanctions, Bransgrove stated, "the people that I believe are totally critical to my case would be my clients and Mrs. Buzzard." Vanessa Buzzard is the attorney who drafted Coral's will, and Bransgrove argued "there is no one better suited to express an expert opinion of testamentary capacity at the time the will was executed than Mrs. Buzzard and if the Court were to strike her in essence it would be a death penalty to the case." We disagree.

Testimony about mental competency or ability is an expression of opinion whether it is from an expert or a layman, and opinion testimony does not establish any material fact as a matter of law. *Williford v. Masten*, 521 S.W.2d 878, 884 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). Non-expert witnesses such as William or Harry, because they knew the testatrix and had reasonable opportunity to observe her acts, conduct and characteristics, have personal knowledge sufficient to support an opinion or conclusion, and may testify as to Coral's mental condition on the occasion in question. *Id.* at 884–85. This is not a case where expert testimony is necessary to provide the requisite legal standard. *See Johnson v. Berg*, 848 S.W.2d at 348. The requisite proof regarding testamentary capacity and undue influence is within the common knowledge and experience of laymen. *Id.* While Buzzard could have articulated a legal opinion as to whether Coral had testamentary capacity or was unduly influenced, the lay witness that was allowed to testify (Harry) needed only to be examined on the elements of each of these claims, *i.e.*, whether the testator knew or had the capacity to know the objects of her bounty, the nature of the transaction in which she was engaged, the nature and extent of her estate, and whether there was an influence exerted, the effective operation of which operated to subvert or overpower Coral's mind at the time she wrote the will, and that the will or disposition would not have been executed or made but for such influence. *Id.* at 885; *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963).

*Braden* also holds that sanctions which "terminate or inhibit" the presentation of a party's claims are authorized by Rule 215, and are sometimes necessary to prevent an abusive party from thwarting the administration of justice by concealing the merits of a case. 811 S.W.2d at 929. The court then recognized that such sanctions "must be reserved for circumstances in which a party has so abused the rules of procedure, despite imposition of lesser sanctions, that the party's position can be presumed to lack merit and it would be unjust to permit the party to present the substance of that position before the court." *Id.; citing TransAmerican*, 811 S.W.2d at 929.

We hold that the exclusion of evidence in this case "inhibited" rather than "terminated" appellants' presentation of their case. *TransAmerican* includes only striking a party's pleadings, dismissing its action, or rendering a default judgment as adjudicating claims based on how discovery was conducted instead of upon the merits of the party's claims; it does not include "exclusion of essential evidence." Even assuming arguendo that this exclusion of evidence was what has been termed a "death penalty," the record reflects that the trial court considered the imposition of lesser sanctions. The trial court's findings at the conclusion of the first hearing on sanctions reflect that he first considered disallowing the late designation of witnesses, then striking all witnesses if they were not timely designated. No order actually striking all witnesses but the proponents was entered until the end of the second hearing on sanctions, at which time the trial court also assessed attorney's fees. The trial court's decision to prohibit one of the proponents (William) from testifying came at the end of the third hearing on sanctions which occurred the day of trial, and seems to have been the result of William's complete failure to file responses to discovery.

The facts of this case would justify the trial court in concluding that appellants as well as their attorney (Bransgrove) were at fault for failing to provide appropriate responses to interrogatories and requests for production propounded by appellee (Annie Lou). The requests in issue are:

*Request No. 2:* Any and all documents, tape recordings, receipts, canceled (sic) checks, records, tangible objects, photographs, video tapes, motion pictures, letters, memorandums or any other instruments inquired about in Contestant's Interrogatory No. 7.

Such documents are available for inspection at the office of Proponents' counsel.

*Request No. 4:* All statements from any bank, savings and loan or any other financial institution where CORAL ELIZABETH RIGGINS maintained an account after the death of LEE RIGGINS.

Proponents are unclear as to what is meant by the term "statements". Upon further clarification, proponents will provide same to the extent that it is in their possession.[4] All banking statements within the time frame inquired about have either been furnished to counsel for the Contestant or are being made available to her Counsel for inspection and/or copying.

*Request No. 5:* All statements from any bank, savings and loan or other financial institutions where Proponents or their wives have maintained an account since 1988 to the current date.

See response to No. 4 above.

*Request No. 6:* All statements from any bank, savings and loan or other financial institution where the ESTATE OF CORAL ELIZABETH RIGGINS has maintained an account since the death of CORAL ELIZABETH RIGGINS.

See response to No. 4 above.

Both William and Harry made little effort to find and turn over documents. Harry admitted that he failed to take documents to his deposition in response to a subpoena duces tecum. Both Harry and William testified they produced records to the extent they were in their possession, but neither contacted any bank or asked a bank to produce

---

4. We note that the remainder of this response to Request No. 4 is found only in the document filed January 7, 1995. The rest of the response to No. 4 is not included in the unsigned and unsworn responses faxed to Annie Lou's attorney May 18, 1994.

records. At the second hearing on February 13, 1995, William testified that on February 10, 1995, he came across some records in a suitcase in a closet as he prepared to attend the hearing. Harry testified that he found some records in his attic on February 11, 1995, and claimed work prevented him from searching for and finding them up to that point. Other evidence showing the proponents were not diligent in their attempts to find documents in their home or to produce documents within their "constructive possession" included their taking documents dating as far back as 1991 from their attorney to do their taxes, after having turned them over to him, thereby preventing the contestant from reviewing them on an agreed date.

Reviewing the entire course of this proceeding under the standards articulated by our supreme court, we hold the trial court did not abuse its discretion by striking all witnesses but the proponents (appellants) as a result of the first two hearings, and all but one proponent after the third hearing. The hearings provided ample evidence from which the trial court could determine whether the offensive conduct was attributable to counsel, the parties, or both. While counsel valiantly attempted to take responsibility for noncompliance with discovery rules, a lawyer cannot shield his client from sanctions and a party must bear some responsibility for discovery abuses when the party is or should be aware of the violations. *TransAmerican*, 811 S.W.2d at 917. In this case, there appears to be a direct relationship between the offensive conduct and the sanction imposed. The proponents' hindrance of the discovery process justified a presumption that their claims and defenses lacked merit, thereby justifying the trial court's partial deprivation of their right to present the merits of their case. *Id.* at 918. As we noted earlier, the parties refused to search for and produce material evidence after the first hearing, despite the imposition of "lesser sanctions."

The sanctions assessed did not exceed appropriate bounds in light of the parties' flagrant bad conduct and counsel's disregard of his responsibilities under the Texas Rules of Civil Procedure. *Id., citing National Hockey League v. Metropolitan Hockey Club,*

*Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976). Appellants' first, second and third points of error are overruled, and the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

In their motion for rehearing, appellants point out that they appeared solely as the independent executors of Coral's estate, and they were "neither named nor served as parties." They argue that as "non-parties," neither of them could be the subject of interrogatories or requests for production under the express provisions of Rules 167 and 168 of the Texas Rules of Civil Procedure, and that the estate could not be sanctioned for the conduct of non-parties, *i.e.,* the executors. We write to clarify our earlier opinion.

It is established that the estate of a decedent is not a legal entity and may not sue or be sued. *Price v. Estate of Anderson,* 522 S.W.2d 690, 691 (Tex.1975). As a result, a suit on behalf of an estate must be brought by the estate's personal representative(s), and a suit seeking to establish the decedent's liability on a claim must be instituted against the estate's personal representative(s). *Id.; Sarny Holdings, Ltd. v. Letsos,* 896 S.W.2d 274, 276 (Tex.App.—Houston [1st Dist.] 1995, writ denied). It follows that an estate cannot be served with or propound discovery. An estate can only do so through its personal representatives—those who have personal knowledge of and access to relevant information in such proceedings anyway. Indeed, the style on all the pleadings in this case is "Estate of Coral Elizabeth Riggins," but the persons upon whom service can be had are listed as "Respondent, WILLIAM LEE RIGGINS, Co–Independent Executor of the ESTATE OF CORAL ELIZABETH RIGGINS" and "HARRY EDWARD RIGGINS, Co–Independent Executor of the ESTATE OF CORAL ELIZABETH RIGGINS."

Texas Rule of Civil Procedure 167 provides that "[a]ny *party* may serve on any other *party* a REQUEST" for discovery and production of documents and things for inspection, copying or photographing. Rule 168 provides that "[a]ny *party* may serve

upon any other party written interrogatories to be answered by the *party served* ...." Appellants argue that "only the estate was a party subject to discovery," but they fail to cite any authority that articulates how an estate can be sanctioned for abuse of that discovery, absent assessment of sanctions against its representatives. Both William and Harry were parties to the suit to set aside the order probating Coral's will, and were properly served with interrogatories and requests for production, and properly sanctioned when their responses were either untimely or incomplete.

As we mentioned in our original opinion, section 240 of the Probate Code provides that if there is more than one executor of an estate at the same time, "the acts of one of them as such executor or administrator shall be as valid as if all had acted jointly...." Tex. Prob.Code Ann. § 240 (Vernon 1980). The interrogatories propounded by the contestant were addressed to "WILLIAM LEE RIGGINS and HARRY EDWARD RIGGINS, Individually and as Co–Independent Executors of the ESTATE OF CORAL ELIZABETH RIGGINS" and were served on the "Proponents' attorney." However, William and Harry were sued only as executors, and were required to answer only as executors. The first page also included a statement that "[t]hese interrogatories shall be answered separately and fully in writing under oath and signed by both Proponents." Thus, the responses filed on January 17, 1995, signed and sworn to only by Harry, constituted a sufficient response on behalf of the estate, but William, by failing to file signed and sworn answers, failed to comply with Texas Rules of Civil Procedure 167 and 168 which require any *party served* with requests for production and interrogatories to respond to them. Further, the estate, which by definition can only act through its representatives William and Harry, failed to produce certain requested documents and did not request or obtain a protective order excusing the failure.

There appears to be a conflict between the rules of discovery, which provide that any party served with interrogatories must answer them, and section 240 of the Probate Code, which provides that an act by one executor "shall be valid as if all had acted jointly." We note that section 240 has never been cited as authority in a discovery case such as this where there are joint executors, only one of whom "timely" answered the discovery requests propounded upon them.

We further note that to follow appellants' argument that Harry's answers were sufficient and were the same answers William would have given means there was no harm in striking William as a witness, as his testimony, as representative of the estate, would have duplicated Harry's testimony. Interrogatories may only be used against the party who answered them. Tex.R. Civ. P. 168.

In their motion for rehearing, appellants also claim we have repeated "the error committed by the court of appeals" in *Hamill v. Level*, 900 S.W.2d 457 (Tex.App.—Fort Worth 1995), *rev'd per curiam*, *Hamill v. Level*, 917 S.W.2d 15 (Tex.1996). In reversing the appellate court in *Hamill*, the supreme court held that the imposition of a "death penalty" sanction was excessive. In *Hamill*, there was a continuing course of conduct in which Hamill failed to respond to interrogatories and requests for production. After a motion to compel and Hamill's broken promise to answer by a certain date, Level filed a motion to dismiss. On the day for the hearing on the motion to dismiss, Hamill served his responses on Level; nevertheless, the trial court dismissed Hamill's claims with prejudice. The court held that "the *sanction of dismissal with prejudice* conflicts with *Trans–American* and its progeny because the sanction imposed in this case is more severe than necessary to satisfy its legitimate purpose and the sanctioned conduct does not justify the presumption that Hamill's claims are meritless." *Id.* at 16 (emphasis added). *Hamill* can be distinguished from the instant case in two ways: 1) such a complete preclusion of presentation of the merits did not occur in the instant case, and 2) the sanction imposed in the instant case satisfies its legitimate purpose, and the sanctioned conduct justifies the presumption that William's and Harry's claims were meritless.

At the hearing on the first motion for sanctions, Annie Lou's attorneys explained that William and Harry were "attacking the underlying relationship" between Coral and her daughter Annie Lou. In return, Annie Lou sought information about Coral's relationship with her sons. Annie Lou's attorneys stated they had inadvertently discovered that certain sums of money were given to William and Harry "about the time the will was changed," but they were unable to determine "what moneys Mrs. Riggins spent, through her bank statements nor what money the boys took in through their bank statements" because of the failure to properly respond to discovery. In response, the trial judge stated, "It's obvious you're not going to have the stuff you need in time to analyze it by the 13th (the trial date)." The trial judge then stated:

> [I]f they took the tax returns when they were at least constructively aware that they were needed, that's some evidence, but the cases are pretty strong that say unless the parties are a significant part of the bad faith or the disregard, conscious disregard for orders or requests, then it's an abuse of discretion to strike everything, if it's primarily the fault of counsel, and he's taken his share of the fault.
>
> So I'm reluctant to completely strike, just because of the case law and because there is no sense in doing this thing twice and costing both sides more money up on appeal if they end up turning this thing around.

Later on in the hearing, after asking proponents' attorney Alan Bransgrove what witnesses he would actually call at trial, the trial court commented, "[i]t seems to me somewhat unfair, Mr. Bransgrove, to allow you to present your case fully and yet you to have not produced the items—." Again, in response, Bransgrove replied that the people who were "totally critical" to his case were William, Harry and Vanessa Buzzard.

We remain convinced that the trial court considered the imposition of lesser sanctions before striking all witnesses but the parties, and that the sanction imposed in this case "fit the crime." We have also considered appellants' request for an *en banc* hearing on their motion for rehearing and their request that our original opinion be published. After considering the motion for an *en banc* hearing, we find that such a hearing is not necessary because of extraordinary circumstances or to maintain uniformity in our decisions. However, we have decided to grant appellants' motion to publish.

Accordingly, appellants' motion for rehearing is overruled, but their motion for publication of the original opinion as well as this opinion, is granted.