**Motion to Dismiss Denied; Affirmed and Memorandum Opinion filed July 31, 2012.**



**In The**

# Fourteenth Court of Appeals

_____

**NO. 14-11-00812-CV**

_____

**PATRICIA VICKERY, Appellant**

**V.**

**MARSHALL GORDON AND CLARDY, DAVIS & KNOWLES LLP, Appellees**

---

**On Appeal from the County Court at Law No. 4**
**Fort Bend County, Texas**
**Trial Court Cause No. 09-CPR-022104**

---

## MEMORANDUM OPINION

This case arises from a will contest initiated by Marshall Gordon and his attorneys at Clardy, Davis & Knowles LLP. After Marshall nonsuited his claims, Patricia Vickery, the proponent of the will, moved for sanctions, arguing that the opposition to probate was groundless, brought in bad faith, and made solely for the purpose of harassment. The trial court declined to impose sanctions. On appeal, Patricia asks us to consider whether the trial court abused its discretion by denying her motion. Marshall presents various reasons to

suggest that the trial court did not abuse its discretion, but in a separate issue, he also moves this Court to dismiss Patricia's appeal for want of jurisdiction. We conclude the following: that the order denying sanctions was final for purposes of appeal; that we have jurisdiction to hear this case; and that the trial court did not abuse its discretion by denying sanctions. We therefore affirm the trial court's judgment.

## BACKGROUND

The decedent, Ned T. Gordon, died from an acute pulmonary thromboembolism. His health had been complicated by various medical conditions, including adenocarcinoma of the lung with metastases to the brain. At the time of death, Ned was engaged to marry Patricia, his significant other for the preceding year and a half. He was survived by two adult children from previous relationships: an estranged daughter, Melissa; and a son, Marshall.

Three wills were executed in the last year of Ned's life. The third and final will devised a large portion of his estate to Patricia. The provisions of this final will were planned over a private meeting with attorney John Millard approximately one month before Ned's death; Patricia was not in attendance at the meeting. In notes taken from the meeting, Millard observed that Ned had testamentary capacity, he was free from duress or influence, and he "clearly understood his estate and how he wanted to dispose of it." Millard's files also contained letters from Doctors Pohil and Ohanian, two of Ned's treating physicians. Both doctors expressed a professional opinion that Ned was mentally competent to make medical and legal decisions on his own.

The will was signed at Patricia's home. Millard used a checklist to ensure that all appropriate formalities were followed. Serving as witnesses were Millard's wife and David Brock, Ned's former colleague. Both witnesses signed a self-proving affidavit attesting that Ned was of sound mind and that he executed the will freely.

Ned died on June 18, 2009. Three days later, Marshall contacted a pathological services company to perform an autopsy on his father. As next of kin, Marshall signed a release form requesting that Ned's medical records be sent from Dr. Pohil directly to the pathologist performing the autopsy. Copies of those records were provided to Marshall in the final autopsy report. In those records, Dr. Pohil remarked that Ned was "alert," "oriented," and "mentally competent" near the time of the will's execution.

Patricia filed an application to probate Ned's will on July 9, 2009. Marshall filed his opposition to probate on July 27, 2009, approximately one month before he received his father's autopsy report. In his opposition to probate, Marshall challenged the will for lack of formalities, lack of testamentary capacity, undue influence, and fraud.

During discovery, the parties deposed an army colonel who regarded Ned as "one of [his] best friends in life." The colonel testified that he had spoken with Ned near the time of the will's execution. According to the colonel, Ned's memory was fine, though he seemed a little weak from the effects of chemotherapy. The colonel also stated that Patricia had renewed Ned's spirit, "gave him his swagger back," and "made his life full." Based on his conversations and visits, the colonel testified that he was never disposed to believe that Patricia had been tricking or unduly influencing Ned.

Marshall served Patricia with written discovery and other requests for production in August 2010. By March 2011, Patricia had not provided a discovery response. By this time, Marshall had abandoned his claim for lack of testamentary capacity, but he continued to assert his other opposition claims. He sent correspondence requesting Patricia's outstanding discovery and a convenient time for Patricia's deposition. When Marshall set a date for the deposition, Patricia successfully moved to quash it. Marshall then filed a motion to compel. On March 22, 2011, less than one month before trial, Patricia finally served Marshall with her discovery responses. Marshall reviewed the newly produced documentation and determined that it addressed all of the key issues that had initially prompted him to file a will contest. Because he no longer perceived a need to continue the

litigation, Marshall moved the court to nonsuit his contest on April 20, 2011. Patricia moved for sanctions one week later.

In her motion, Patricia contended that Marshall and his law firm had failed to perform a reasonable inquiry into the underlying facts. She complained of various omissions, which largely focused on their failure to obtain Ned's medical records in a timely fashion. In one part of the motion, Patricia even alleged that Marshall and his attorneys "did not perform an inquiry at all." Marshall filed a response which set forth evidence and argument that his opposition to probate was brought in good faith. The trial court held a hearing, where it heard additional evidence, including Marshall's deposition, the army colonel's deposition, and Millard's live testimony. After considering all of the evidence, the trial court denied Patricia's motion for sanctions. Patricia now appeals.

## JURISDICTION

Not long after Patricia filed her notice of appeal, Marshall moved this Court to dismiss her case for want of jurisdiction. In his motion, Marshall argues that Patricia's appeal is interlocutory and non-appealable because the trial court's judgment denying sanctions was not made final and because other issues in the estate remained to be litigated. As a threshold matter, we address this jurisdictional issue first.

Generally, appeals may be taken only from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). In most types of trial proceedings, only a single final order or judgment is ever rendered. *Id.* at 192. Probate proceedings are an exception to this rule, and in such cases, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Id.* This exception is justified by the recognized need to review "controlling, intermediate decisions before an error can harm later phases of the proceeding." *Brittingham-Sada de Ayala*, 193 S.W.3d 575, 578 (Tex. 2006) (quoting *Logan v. McDaniel*, 21 S.W.3d 683, 688 (Tex. App.—Austin 2000, pet. denied)).

For a probate order to confer appellate jurisdiction, it is therefore unnecessary that the order be one that fully and finally disposes of an entire probate proceeding; rather, the order must be one that finally disposes of and is conclusive of the issue or controverted question for which that particular part of the proceeding is brought. *See id.*; *Kelley v. Barnhill*, 188 S.W.2d 385, 386 (Tex. 1945). In deciding whether an interim probate order is final for purposes of appeal, we apply the following test:

> If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995). Determining issues of finality and appealability comes with some "inherent difficulties." *Brittingham-Sada de Ayala*, 193 S.W.3d at 578. For this reason, the supreme court has urged parties to seek severance orders to eliminate any ambiguities about whether an order was intended to be final and appealable. *Crowson*, 897 S.W.2d at 783. "For appellate purposes, [an interlocutory probate order] may be made final by a severance order, if it meets the severance criteria . . . ." *Id.*

Here, the judgment denying sanctions was entered in Cause No. 09-CPR-022104, which was initiated for the application of Ned's will to probate. Patricia's motion for sanctions was filed in that same cause number in response to Marshall's decision to nonsuit. During the course of the proceedings, the trial court made additional rulings unrelated to the probate of the will or Marshall's opposition thereto. A bank filed a plea in intervention to deposit funds in the registry of the court. Ned's daughter, Melissa, also filed a plea in intervention, petitioning that those funds be placed in trust for her children. The trial court granted the bank's plea, and then discharged it from suit once the funds were deposited.

5

On August 8, 2011, the trial court signed an order severing Melissa's plea in intervention from the main case.[1] That same day, the trial court signed both a separate order admitting Ned's will to probate and a judgment—the focus of this appeal—denying sanctions and granting other forms of relief.

After the severance, motions for summary judgment relating to the deposited funds were filed under cause numbers belonging to both the main case and the severed case. On April 20, 2012, the trial court granted a summary judgment in Marshall's favor in the main case. The trial court subsequently entered a judgment nunc pro tunc, clarifying that the order for summary judgment should have been entered in the severed case.

The issue we must decide is whether the judgment signed on August 8, 2011 denying sanctions is final for purposes of this appeal. We note first that there is no statute expressly authorizing an appeal from the denial of a motion for sanctions. Nevertheless, under the circumstances of this case, we conclude that the judgment is final for purposes of this appeal. Patricia's motion for sanctions may logically be considered a part of the proceedings relating to the admission of Ned's will to probate. Indeed, the motion pertained exclusively to the actions of Marshall and his law firm during the course of the will contest. When judgment was entered on the sanctions issue, Marshall had already nonsuited his will contest and the trial court had signed an order admitting the will to probate. Patricia's motion did not pertain to any other part of the probate proceedings, and the judgment denying sanctions contained some language of finality, indicating "that all relief not expressly granted herein is DENIED." On this discrete issue of the will's admission to probate, no unadjudicated issues remained.

Although other matters remained pending in the estate, the order of severance makes clear that these other issues related to Melissa's plea in intervention, not Marshall's

---

[1] The severance order assigns Melissa's plea in intervention to Cause No. 09-CPR-022104A. However, the clerk's record reflects that several pleadings were filed in Cause No. 11-CPR-022104A instead.

6

will contest and not Patricia's request for sanctions. In a hearing in March 2012, the trial judge even expressed his belief that all remaining issues were being tried under the severed cause number: "Correct me if I'm wrong, [counsel for Marshall], but I thought other than [Patricia's] appeal in this matter, that the 022104, there is nothing more to go in that one, and everything is now in 022104 A."

The judgment denying sanctions was part of proceedings relating to the probate of Ned's will. All issues relating to those proceedings were finally disposed of when the trial court denied Patricia's motion for sanctions, admitted the will to probate, and severed any remaining issues and parties for later determination. The judgment was final and appealable insofar as it pertained to the denial of Patricia's motion for sanctions.

Having concluded that the judgment denying sanctions is final, we deny Marshall's motion to dismiss and proceed to the merits of Patricia's appeal.

## SANCTIONS

We review a trial court's decision to grant or deny sanctions for an abuse of discretion. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *Clark v. Bres*, 217 S.W.3d 501, 515 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). When reviewing matters committed to the discretion of a trial court, we may not as an appellate court substitute our judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). Rather, our review is limited to deciding whether the trial court acted arbitrarily, unreasonably, or without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). An abuse of discretion does not occur if the trial court bases its decision on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978).

### A.    Reasonable Inquiry

In the court below, Patricia moved for sanctions under both Rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil Practice and Remedies Code.

7

On appeal, Patricia has limited her complaint to only the denial of sanctions under Chapter 10. That chapter provides as follows:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry . . . each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Tex. Civ. Prac. & Rem. Code Ann. § 10.001(3) (West 2011).

Patricia argues that sanctions were warranted because Marshall failed to make the "reasonable inquiry" required of Chapter 10. Her position is premised on the notion that certain records and witnesses were available but not consulted prior to Marshall's filing of his opposition to probate. Patricia argues that if Marshall and his law firm had consulted the available evidence, they would have "unquestionably" seen that Ned possessed testamentary capacity, that the will formalities were followed, and that Patricia did not unduly influence Ned or procure the will by fraud.

Patricia focuses first on the evidence of Ned's testamentary capacity. She notes that Doctors Pohil and Ohanian provided letters to Millard stating that Ned was mentally competent and able to make his own legal decisions. She also points to testimony and records from Millard, who expressed a professional opinion that Ned had testamentary capacity around the time of the will's execution. All of these records were available for Marshall's review. Patricia complains that Marshall failed to discuss his father's mental competency when he first contacted Dr. Pohil. She complains further that Marshall made no request for records from Dr. Ohanian or from any other health care provider. Finally, she complains that Marshall failed to speak with Millard before filing his opposition to probate. Patricia contends that because the records from these witnesses supplied some proof that Ned possessed testamentary capacity, Marshall filed his opposition to probate without having formed a reasonable inquiry into the underlying facts.

Patricia relies on *Low v. Henry* for authority. 221 S.W.3d 609 (Tex. 2007). In that wrongful death case, an attorney certified pleadings that the defendant physicians negligently administered a drug used to treat gastric reflux. *Id.* at 616–17. The supreme court upheld the trial court's decision to impose sanctions against the attorney because the attorney had access to the patient's medical records, and the records gave no indication at all that the physicians had ever prescribed or provided the drug to the patient. *Id.* Patricia suggests that *Low* is analogous here because Marshall filed his opposition to probate when he had access to medical records that similarly contradicted his claims.

Patricia's argument seems to presuppose that the medical records and attorney's notes in this case are dispositive of the legal challenges raised in Marshall's will contest. We must disagree. Testimony about mental competency or ability is an expression of opinion, and such opinion testimony, whether it be expert or lay, does not establish any material fact as a matter of law. *Estate of Riggins*, 937 S.W.2d 11, 19 (Tex. App.—Amarillo 1996, writ denied). The records cited by Patricia would be weighed by the trier of fact just like any other evidence, including any controverting evidence introduced by Marshall. Thus, the records do not necessarily foreclose a finding that Ned lacked testamentary capacity, nor do they establish that Marshall failed to reasonably inquire into the underlying facts.

Our review of the record reveals ample evidence to show that Marshall performed reasonable inquiries both before and after the filing of his opposition to probate. This evidence, of which mention is wholly lacking in Patricia's brief, includes affidavit and deposition testimony pertaining to each of Marshall's four challenges. In his deposition, for instance, Marshall testified about the reasons prompting his investigation into Ned's final will. Before Ned's death, Marshall was contacted by David Brock, one of the witnesses at the will signing ceremony. Brock told Marshall that "this whole episode was both inappropriate and of great concern" and that "there's something very wrong here."

9

Marshall indicated further that Brock was planning to testify that Ned was incapacitated when he signed the will.

Marshall also described an incident where Patricia took Ned to New York on a "theater trip" just after Ned had completed a radiation treatment. Marshall, who did not accompany Ned, was advised from relatives that Ned mostly remained in bed during the trip, and when he attempted to respond to others, he "didn't make any sense" and he deferred questions to Patricia. His relatives also urged that Ned should not have been traveling, and that he needed to return to the hospital or to Houston.

Marshall also introduced the affidavit of Michael Udayan, Ned's friend and business partner. Udayan testified that Patricia had evicted Ned from her home after she learned that he had given money to his estranged daughter. Udayan allowed Ned to stay at a hotel he managed because Patricia's grandson was occupying Ned's own home. Udayan stated that Ned appeared very depressed during this period, and that he contemplated ending his relationship with Patricia. He also said that he "witnessed Pat attempting to influence, control, and impose herself onto Ned's business dealings during a prospective business meeting." Udayan expressed these concerns to Marshall at Ned's funeral, claiming, "I knew if I were in [Marshall's] position I would want to know if there was any foul play involved in Ned's passing."

Shortly after Ned's passing, Marshall also contacted Robert Vickery, Jr., Patricia's stepson. Robert's father had been married to Patricia at the time that Patricia began her relationship with Ned. Robert was unaware of this extramarital affair, and he was surprised to discover that Patricia had a live-in boyfriend during part of her marriage. Robert testified that his father died in April 2009, less than two months before Ned. During his father's final days, Robert received a call from Patricia asking whether he agreed with her decision to withhold antibiotics to fight an infection his father had contracted. Robert initially trusted Patricia's assessment of his father's medical condition. After his father subsequently died, however, Robert felt betrayed by Patricia. Because of her other existing

10

relationship, Robert suspected that Patricia had withheld medication in order to marry Ned as soon as possible. When he learned the facts of this case, Robert commented, "I bet Pat worked her way big time into Ned's will."

Alan Gordon, Ned's younger brother, also provided affidavit testimony. Alan stated that he visited Ned in late May 2009, around the time of the will's execution. During his visit, Alan formed the opinion that Patricia was attempting to influence Ned for her own benefit. According to Alan, Patricia had convinced Ned that the will from her other husband was being challenged by her stepsons, and she was concerned that if Ned did not provide for her, she would be left penniless and unable to pay for cancer treatment should her cancer ever return. Alan was also disturbed to discover during his visit that Patricia had not provided any at-home nursing care, as she had previously agreed to do. Alan believed that Patricia was trying to isolate Ned and make him completely reliant on her. Alan also testified that all of these observations were communicated to Marshall in July 2009, shortly after Ned's death.

Marshall relayed all of this information to his attorneys, who provided additional affidavit testimony in response to Patricia's motion for sanctions. Altogether, the evidence set forth sufficient reasons for Marshall to be concerned about the facts and circumstances surrounding the execution of Ned's final will. Because the evidence demonstrated that a reasonable inquiry was conducted both before and after the filing of the opposition to probate, we cannot say that the trial court abused its discretion by declining to impose sanctions.

We now address several remaining arguments raised in Patricia's brief. Patricia contends that Marshall failed to make a reasonable inquiry after he filed his opposition to probate because he made no effort to subpoena certain documents during the course of the will contest. We reject this argument because the record demonstrates that Marshall served Patricia with requests for production and that those requests went unanswered. *See* Tex. R. Civ. P. 193.5(b) (a party has a duty to amend or supplement a discovery response whenever

11

the party discovers the necessity for such a response, and it is presumed that an amended or supplemental response made less than thirty days before trial is not made reasonably promptly). The record also reflects that Marshall contacted Millard's office to obtain his file, but Millard elected not to return his call.

Patricia argues next that Marshall "chose not" to depose her. The record reflects the contrary. Marshall sent correspondence requesting a convenient date for Patricia's deposition. When no response was made, Marshall noticed her deposition, and her attorneys immediately moved to quash it.

Patricia finally contends that Marshall's motion for nonsuit constitutes the most persuasive evidence that no reasonable inquiry was made. Patricia bases her argument on statements in the motion wherein Marshall reveals that his all of his concerns have been addressed by "documentation recently provided." Patricia surmises, "The documents to which Marshall Gordon refers can only be Dr. Pohil's, Dr. Ohanian's and Mr. Millard's records, *the very documents available to Appellees prior to and/or immediately after filing the Opposition to Probate*."

We reject Patricia's argument for several reasons. First, Marshall's motion for nonsuit does not specify any of the documents that were produced by name, and there is no conclusive indication that the documents identified by Patricia are the same documents that resolved all of Marshall's concerns. Second, the documents cited by Patricia primarily address the issue of Ned's testamentary capacity; by the time they were finally produced, however, Marshall had already dropped his claim for lack of testamentary capacity. Thus, these records would not appear to be a determining factor in Marshall's motion for nonsuit. Finally, Marshall's attorney argued during the hearing on the motion for sanctions that the documents leading to the motion for nonsuit were actually photographs and love letters that seemed to substantiate a legitimate, caring relationship between Ned and Patricia. Marshall claimed that he nonsuited his opposition because this evidence portrayed a side of Patricia that was contrary to what he believed he could prove to a jury.

12

A plaintiff may nonsuit his claim any time before he introduces all of his evidence. Tex. R. Civ. P. 162. This right is unqualified and absolute, so long as the defendant has not made a claim for affirmative relief. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 840 (Tex. 1990). A plaintiff may decide to nonsuit his case for a variety of reasons, many having nothing to do with the merits of the litigation. *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 192 (Tex. App.—Texarkana 2011, no pet.). In the absence of evidence regarding a plaintiff's motive to nonsuit, the simple fact that he filed a nonsuit does not constitute evidence that sanctions are warranted. *Id.* at 193. We cannot detect an improper motive here, nor can we determine from the mere fact of his nonsuit alone that Marshall failed to reasonably inquire into his claims before filing his opposition to probate.

## B.     Improper Purpose

Patricia argues next that Marshall initiated his will contest for an "improper purpose" and for the purposes of harassment, in violation of Chapter 10. *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.001(1). In her brief, she contends, "One can simply look at the strategy that was followed and see that it was aimed at vilifying Appellant and unnecessarily increasing her legal fees, rather than pursuing any good faith challenges supported by fact or law." The only argument Patricia offers in support of this conclusory statement is her contention that Marshall's attack on her extramarital relationship was "irrelevant" to assessing the validity of Ned's will.

Marshall proffered evidence that Patricia was involved in concurrent relationships with two men who fell ill and died relatively close in time. The evidence further demonstrated that Patricia stood to benefit from both men's final wills. The nature of these relationships, one of which was apparently hidden from the other, is probative evidence in our view that Patricia's actions were suspect and that she may have been influencing both men to be named in their wills. To this extent, we cannot say that Marshall's attacks were groundless or irrelevant.

13

Patricia also contends that Marshall's opposition was improper because it lacked evidentiary support. As discussed above, Marshall communicated with several persons after his father's death, and each of them provided a number of reasons to suggest that Ned's will may have been executed under suspect circumstances. Contrary to Patricia's argument, Marshall presented some evidence to show that the bases asserted in his opposition to probate had evidentiary support.

## CONCLUSION

The record supports a finding that Marshall performed a reasonable inquiry into the facts underlying his will contest. The record also supports a finding that Marshall initiated his will contest in good faith, and that he nonsuited his opposition to probate because he was unlikely to prove his claims to the jury, rather than because he was attempting to harass Patricia. For these reasons and the reasons discussed above, the trial court did not abuse its discretion in denying Patricia's motion for sanctions. In light of this disposition, we need not address Patricia's argument regarding attorney's fees. The judgment of the trial court is therefore affirmed.

/s/    Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown.